**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**JASON A. I.,**

                                **Plaintiff,**                                **20-CV-609Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**

---

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #17.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), with the Social

Security Administration ("SSA"), on September 8, 2014, at the age of 34, alleging

disability due to anxiety, panic attacks, obsessive compulsive disorder, attention deficit

disorder ("ADD"), and head trauma. Dkt. #11, p.184.

On February 16, 2017, plaintiff appeared with counsel and testified, along

with an impartial vocational expert ("VE"), Karenna Davis, at an administrative hearing

before Administrative Law Judge ("ALJ"), Julia D. Gibbs. Dkt. #11, pp.28-69. Plaintiff

testified that he had a history of multiple head injuries. Dkt. #11, p.35-39. He found it

nearly impossible to do anything, because he can't remember anything. Dkt. #11, p.46.

Plaintiff's first head injury was sustained while playing hockey in 2001. Dkt. #11, pp.52

& 57. Since then he has experienced anxiety and short term memory issues. Dkt. #11,

pp.52-53. Plaintiff experienced continuous anxiety and panic attacks, which often

caused him to vomit. Dkt. #11, pp.54-56. He was still healing from a spiral fracture to

his right tibia and fibula sustained in December of 2015. Dkt. #11, pp.61-62. He has

difficulty sitting for any length of time due to his anxiety and attention deficit

hyperactivity disorder ("ADHD"), which causes him to pace. Dkt. #11, p.64.


        Plaintiff went to animal behavior college in 2009, learned from other

animal trainers, and is recognized for his skill at dog training, including for police,

protection and service. Dkt. #11, pp.40 & 58-59. He has been a handler since 2004 and

training since 2006. Dkt. #11, pp.45-46. He testified that he is a phenomenal dog trainer

despite his disability and that police departments are willing to accommodate his

schedule and needs because of his skill. Dkt. #11, p.59. In 2010, he worked at Petco,

but lost the job because of his anxiety. Dkt. #11, p.49. In 2012, he worked for room and

board at Bulox Canine Kennels doing military and police canine training. Dkt. #11,

pp.46-47. In 2013, he worked as an armed security guard for Special Operations

Protection Agency. Dkt. #11, pp.47-48. In the past year, he has worked with

approximately six dogs, including work with Sheriff departments. Dkt. #11, p.41. For the

police dogs, plaintiff testified that he selects the dogs and they live with him during

training. Dkt. #11, p.42. He works with others when he is training dogs to search for

narcotics, for example, but has a hard time working with new people. Dkt. #11, p.57. He donates the dogs, but receives approximately $2,000 to cover costs. Dkt. #11, p.43.

The VE classified plaintiff's past work as dog trainer as a skilled, medium exertion position. Dkt. #11, p.66. When asked if there were any unskilled jobs at the light exertion level that could be performed either sitting or standing, so that the worker could alternate between the two positions without having to stop work activity, and that avoided interacting with the public or working in a large crowd, the VE testified that plaintiff could work as a weight recorder, marking clerk and hand sander, each of which were unskilled, light exertion positions. Dkt. #11, p.67. The VE clarified that each of these positions could be performed with only occasional contact with coworkers or supervisors. Dkt. #11, pp.68-69. If plaintiff was absent one day per week or off task 10% or more of the work day, the VE testified that he could not sustain employment. Dkt. #11, p.68.

The ALJ rendered a decision that plaintiff was not disabled on May 9, 2017. Dkt. #11, pp.15-24. The Appeals Council denied review on March 8, 2018. Dkt. #11, p.6. Plaintiff commenced an action seeking review of the Commissioner's final decision on May 3, 2018. 18-CV-508 at Dkt. #1. By Stipulation and Order entered April 1, 2019, the matter was remanded to the Commissioner because the administrative record contained a medical report for another individual who shared plaintiff's name. 18-CV-508 at Dkt. #14.

On October 25, 2019, plaintiff appeared with counsel and testified, along with his mother and an impartial vocational expert ("VE"), William Cody, at an administrative hearing before Administrative Law Judge ("ALJ"), David J. Begley. Dkt. #11, pp. 355-394. Plaintiff's counsel informed the ALJ that he continued to search for medical records, but had been unsuccessful, noting that a lot of providers responded that there was no medical evidence for the dates of service requested. Dkt. #11, pp.358-359. Plaintiff's counsel reported that plaintiff's personality and behavior changed drastically after he was checked from behind and hit his head on the wooden enclosure of the penalty box while playing hockey on December 12, 1997. Dkt. #11, p.360. Plaintiff's counsel reported that plaintiff suffered another head injury in Florida in 2004 and, most recently, hit his head on cement and suffered a concussion on September 10, 2015. Dkt. #11, pp.360-361.

Plaintiff testified that his anxiety is so bad that he will throw up every five or ten minutes, sometimes for an entire day. Dkt. #11, p.364. He testified that he was so anxious that he wouldn't be able to come to the hearing without getting sick that he wasn't able to sleep. Dkt. #11, p.364. He testified that it is very difficult for him to do anything anymore, even walk out his door. Dkt. #11, p.363. Plaintiff broke his leg after a fall at Chestnut Ridge while working with a dog for search and rescue in December of 2015. Dkt. #11, pp.378-379. He has been unable to train dogs for the past few years. Dkt. #11, p.376. Plaintiff's mother and ex-girlfriend help him with household chores. Dkt. #11, pp.369-370. Plaintiff attempted to attend Erie Community College in 2000, but his "brain wasn't connecting." Dkt. #11, pp.377-378.

Plaintiff's mother testified that, after his head injury at the hockey rink, plaintiff became a completely different kid - agitated and unable to pay attention or complete his homework. Dkt. #11, pp.380-381. She would have to drive him to school, because he would miss the bus and she sat with him in detention to make sure he was there. Dkt. #11, p.381. He lost his job, which he had loved. Dkt. #11, p.381. He became short-tempered and had trouble leaving the house. Dkt. #11, p.381. He has attempted multiple jobs, but none of them last. Dkt. #11, pp.383-384. He has been evicted from apartments three times. Dkt. #11, pp.385-386. He wants to work with dogs, but his anxiety is debilitating and prevents him from interacting with their owners. Dkt. #11, p.387. He cannot remember how to use the washing machine. Dkt. #11, p.387. His apartment is filthy. Dkt. #11, p.387. He is completely dependent upon her, but also combative. Dkt. #11, p.388. He vomits constantly. Dkt. #11, p.389. He is not taking medication because he throws everything up. Dkt. #11, p.389. Although he doesn't want to give up trying, plaintiff's mother did not think he could be successful in a job. Dkt. #11, p.390.

When asked to assume an individual with plaintiff's age, education and past work experience who could work at the light exertional level at simple, repetitive tasks in a low stress job which was free of fast paced production requirements, no hazardous conditions, with only occasional decision-making, changes in work setting and interaction with the public, co-workers and supervisors, the VE testified that plaintiff could work as a sorter, packer and cleaner housekeeper, each of which were unskilled jobs performed at the light exertional level. Dkt. #11, p.392. The VE further testified that

absences of more than two work days per month or off task 15% or more of the workday would preclude employment. Dkt. #11, p.393.

The ALJ rendered a decision that plaintiff was not disabled on January 28, 2020. Dkt. #11, pp.331-347. Plaintiff commenced this action seeking review of the Commissioner's final decision on May 22, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

        In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the application date of September 8, 2014; (2) plaintiff's obesity, insomnia, history of traumatic brain injury and history of learning disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work except that he was limited to simple,

routine and repetitive tasks in a low stress job with no hazardous conditions free of fast-paced production requirements requiring only occasional decision-making or changes in the work setting and no more than occasional interaction with coworkers and supervisors, no tandem tasks, and no direct interaction with the general public; and (5) plaintiff had no past relevant work, but was capable of working as a sorter, packer or cleaner/housekeper, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #11, pp.17-24.

Plaintiff argues that the ALJ improperly rejected the opinion evidence of record, thereby relying improperly upon his own lay opinion in determining an RFC that was not supported by substantial evidence. Dkt. #16-1, pp.13-17. In light of the limited weight afforded to the opinions of plaintiff's medical providers, plaintiff argues that it is unclear how the ALJ determined plaintiff's RFC or what medical evidence he relied upon. Dkt. #16-1, pp.17 & 19. For example, plaintiff argues there is no medical opinion regarding plaintiff's capacity to perform work at the light exertional level. Dkt. #16-1, p.23. Plaintiff also argues that the ALJ failed to provide sufficient reasons for failing to afford controlling weight to Dr. Chesnutt's opinions. Dkt. #16-1, p.19. Finally, plaintiff argues that the ALJ failed to support his determination that the opinion of plaintiff's treating physician or licensed mental health counselor was not supported by objective medical evidence. Dkt. #16-1, pp.21-22.

The Commissioner responds that the ALJ properly assessed the opinion evidence, giving weight to those portions that were well supported and consistent with

the evidence of record, including generally normal objective clinical examination, lack of

consistent treatment or adherence to medication, and plaintiff's self-reported activities.

Dkt. #18-1, p.6. The Commissioner notes that Dr. Chestnutt provided four  differing

opinions based upon the same assessment, which occurred well before the relevant

period. Dkt. #18-1, pp.8-9. The Commissioner argues that the ALJ's RFC properly

accounts for the limitations supported by the medical evidence. Dkt. #18-1, pp.11-14.

The Commissioner argues that the ALJ properly considered plaintiff's conservative and

infrequent treatment and possessed sufficient evidence to render a decision without the

assistance of a consultative examination. Dkt. #18-1, pp.16-17.


        Karen Chesnutt, Ph.D., conducted a psychological evaluation of plaintiff

on January 31, 2013 and February 19, 2013 to assess the effects of a traumatic brain

injury. Dkt. #11, p.242. Plaintiff reported significant problems with anxiety, including

some OCD, some claustrophobia, and significant amounts of agoraphobia which made

it difficult for him to successfully engage in any kind of work. Dkt. #11, p.243. She also

reported frequent panic attacks and stomach aches, secondary to stress. Dkt. #11,

p.243. Dr. Chesnutt administered the WAIS IV to plaintiff, who was cooperative, but

appeared to have a significant amount of anxiety about the testing. Dkt. #11, p.243.

Plaintiff scored in the average to low average range of measured intelligence and

exhibited problems with short term memory, expressive langauge and paper and pencil

speed. Dkt. #11, pp.243-243. Dr. Chesnutt reported that plaintiff's emotional status was

more concerning than his cognitive functioning, reporting:

        I found him to have severe levels of anxiety which clearly
        interfered with his ability to function. He does have an

element of paranoia, with much concern about his firearms and security clearance. He reported having panic attacks on a daily basis. He also reports having difficulty leaving the house; in fact, his girlfriend had to coax him out of the house to come to his appointments. She reported that he had lost a number of dog training jobs because he would fail to go to work because of his anxiety. There is some evidence that a head injury can trigger severe levels of anxiety.

Dkt. #11, p.244. Dr. Chesnutt opined that it was "imperative" that plaintiff see a

psychiatrist to get medication to control his anxiety." Dkt. #11, p.244. She further opined

that plaintiff's ability to be self-supporting was dependent upon the effectiveness of

medication in treating his anxiety and recommended that plaintiff apply for SSI in the

event that he cannot be fully employed. Dkt. #11, pp.244-245.

On November 4, 2014, Dr. Chesnutt completed a Medical Examination for

Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction

Determination for the New York State Office of Temporary and Disability Assistance

based upon her assessment of plaintiff on January 31, 2013 and February 19, 2013.

Dkt. #11, pp.619-620. Dr. Chesnutt diagnosed plaintiff with severe anxiety and paranoia

and indicated that plaintiff was very limited in his ability to carry out instructions;

maintain attention/concentration; and function in a work setting at a consistent pace.

Dkt. #11, p.255. She also indicated that plaintiff was moderately limited in his ability to

understand and remember instructions; make simple decisions; interact appropriately

with others; and maintain socially appropriate behavior without exhibiting behavior

extremes. Dkt. #11, p.255.

On May 12, 2015, plaintiff advised his primary care physician, Zuzanna Rozmus, M.D., that he had been very anxious recently. Dkt. #11, p.591. Dr. Rozmus observed that plaintiff was anxious and prescribed Lexapro. Dkt. #11, pp.593-594.

On September 15, 2015, plaintiff reported complaints of nausea, lightheadedness, dizziness, forgetfulness and mood changes following a concussion sustained when he fell on concrete while training a dog. Dkt. #11, p.587. Dr. Rozumus observed that plaintiff took a few moments to recall facts and referred plaintiff to a concussion specialist. Dkt. #11, p.590.

Plaintiff was diagnosed with anxiety during an emergency department visit at Buffalo General Medical Center on September 17, 2015. Dkt. #11, p.263. Plaintiff appeared "very upset, very emotional." Dkt. #11, p.273. He reported drinking alcohol every evening. Dkt. #11, p.273. A CT of plaintiff's brain was essentially unremarkable. Dkt. #11, p.295.

On September 28, 2015, Michael Freitas, M.D., evaluated plaintiff following his concussion sustained on September 5, 2015. Dkt. #11, p.699. Dr. Freitas observed that plaintiff's mood was normal and his affect anxious. Dkt. #11, p.700. His immediate memory and recall memory was intact. Dkt. #11, p.700. He was able to concentrate. Dkt. #11, p.700. Dr. Freitas diagnosed plaintiff with a concussion and noted that he was significantly anxious. Dkt. #11, p.701. Dr. Freitas opined that plaintiff's worsening anxiety was worsening his perception of his concussion symptoms.

Dkt. #11, p.701. Dr. Freitas declined plaintiff's request for diazepam, explaining that plaintiff's chronic anxiety and panic disorder would be best treated by his primary care physician or a psychiatrist. Dkt. #11, p.701.

Plaintiff underwent surgery for a fractured right tibia with associated fibular fracture on December 9, 2015. Dkt. #11, p.703.

On May 18, 2016, Dr. Rozmus noted plaintiff's failure to follow up with referral for upper endoscopy to assess his complaints of chronic abdominal pain and vomiting. Dkt. #11, p.585. He was also provided a referral for physical therapy following his tibia fracture and prescribed Zoloft for chronic anxiety. Dkt. #11, p.585. Dr. Rozmus declined to sign plaintiff's disability forms absent a psychology evaluation. Dkt. #11, p.585.

Dr. Chesnutt saw plaintiff intermittently between January 31, 2013 and May 20, 2016 and continued to diagnose plaintiff with severe anxiety. Dkt. #11, p.613. She noted "[m]any requests for me to complete forms; I stopped, since I had not seen him nor was I treating him." Dkt. #11, p.613.

On January 30, 2017, Dr. Chestnutt completed an assessment of plaintiff's functional limitations based upon the diagnostic testing conducted on January 31, 2013 and February 19, 2013, indicating that plaintiff was very limited in his ability to: carry out instructions; maintain socially appropriate behavior without exhibiting behavior

extrements; and function in a work setting at a consistent pace. Dkt. #11, p.255. Dr.

Chestnutt also indicated that plaintiff was moderately limited in his ability to understand

and remember instructions; maintain attention/concentration; make simple decisions;

interact appropriately with others; and maintain basic standards of personal hygiene

and grooming. Dkt. #11, p.255. Dr. Chestnutt stated that her testing indicated that

plaintiff did have residual effects from his head injury and that she also found him to be

significantly disabled due to his anxiety. Dkt. #11, p.254. She reported that plaintiff has

been in treatment, trying medication to help him cope with his anxiety, but was unable

to find the right combination of medication to control his anxiety. Dkt. #11, p.254.

On April 11, 2018, PA-C Erin Sullivan noted that plaintiff was scattered in his

thoughts, which is his baseline, due to concussion. Dkt. #11, p.676. He denied nausea

or vomiting. Dkt. #11, p.673.

Plaintiff denied nausea or vomiting at a primary care visit on October 25,

2018 for infection after being scratched by a dog. Dkt. #11, p.562. He was observed to

have an appropriate mood, normal affect and thought process demonstrating

relevance. Dkt. #11, p.564.

On February 26, 2019, plaintiff denied nausea or vomiting but reported

overwhelming stress, sleep disturbances and anxiety. Dkt. #11, p.602. Kaitlyn Domres,

M.D., provided plaintiff with a referral to a new mental health provider. Dkt. #11, p.604.

Dr. Domres completed a Medical Examination for Employability Assessment, Disability

-13-

Screening, and Alcoholism/Drug Addiction Determination Form for the New York State Office of Temporary and Disability indicating that plaintiff was moderately limited in his ability to walk, sit, lift, carry, push, pull, bend, climb stairs, make simple decisions, maintain socially appropriate behavior without exhibiting behavior extremes and function in a work setting at a consistent pace; moderately to very limited in his ability to stand; and very limited in his ability to understand and remember instructions, carry out instructions, and maintain attention and concentration. Dkt. #11, p.735.

On July 5, 2019, plaintiff reported weight loss as a result of reduced alcohol intake, noting that he has been less anxious with reduced alcohol intake. Dkt. #11, p.634. He declined medication for anxiety, stating that it does not work. Dkt. #11, p.634. Dr. Domres provided plaintiff with referrals for mental health treatment and evaluation of concussion syndrome. Dkt. #11, p.637.

Plaintiff reported overwhelming stress, sleep disturbance and anxiety on October 2, 2019. Dkt. #11, p.663. He also reported that he had cut his drinking from 6-8 beers daily to 2-3 beers daily and had tried marijuana to help his anxiety. Dkt. #11, p.663. Dr. Domres noted that plaintiff was seeing a counselor which has been helping him significantly. Dkt. 311, p.666. Dr. Domres referred plaintiff to psychiatry for completion of SSI paperwork. Dkt. #11, p.666.

On July 10, 2019, plaintiff denied nausea or vomiting to Dr. Domres. Dkt. #11, p.630.

On July 31, 2019, John Leddy, M.D., a primary care sports medicine physician specializing in evaluation and treatment of post-concussion syndrome, evaluated plaintiff and observed him to be obviously quite anxious with some pressured speech. Dkt. #11, p.11. Dr. Leddy opined that his symptoms were the result of anxiety rather than his history of concussions. Dkt. #11, p.707. Dr. Leddy recommended cognitive behavioral therapy. Dkt. #11, p.707.

On September 30, 2019 and November 4, 2019, Taryn Edmondson, LMHC, at BestSelf Behavioral Health, provided a Medical Opinion Re: Ability To Do Work-Related Activites (Cognitive), based on treatment since July 24, 2019 assessing plaintiff to be seriously limited[1] in his ability to maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; set realistic goals or make plans independently of others; and maintain socially appropriate behavior. Dkt. #11, pp.777-779. Ms. Edmondson explained that plaintiff has difficulty maintaining appropriate interpersonal relationships due to trouble managing emotions, attention and time management. Dkt.

---

[1] Seriously limited is defined as noticeable difficulty from 11-20% of the workday or workweek. Dkt. #11, p.777.

#11, p.778. She noted the following symptoms: impaired impulse control; generalized

persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and

intrusive recollections of a traumatic experience, which are a source of marked distress,

pathological dependence, passivity or agressivity; intense and unstable interpersonal

relationships and impulsive and damaging behavior; flight of ideas; inflated self-esteem;

and easy distractibility. Dkt. #11, p.780. Plaintiff was diagnosed with adjustment

disorder with anxiety, as well as narcissistic and histrionic tendencies. Dkt. #11, p.779.

Ms. Edmonson was unable to assess the effect of alcohol or substance abuse on

plaintiff's symptoms as he had not completed a toxicology screening, but noted

continuing assessment to rule out alcohol related issues and  bipolar disorder. Dkt. #11,

p.779 & 784.


On October 23, 2019, plaintiff underwent an integrated initial psychiatric

evaluation at BestSelf Behavioral Health, resulting in the following impression:

> [Plaintiff] has a history of self-reported ADD/ADHD and trauma
> exposure related to his previous employment in law enforcement
> and exposure to violence. He reports impulsivity throughout his
> childhood and into adulthood. His chief complaint is the severe
> anxiety and panic he's been experiencing since the breakup of a
> longterm relationship. The information he discloses appears to be
> inconsistent to prior assessments with counselor, and it is difficult to
> obtain a detailed history.This could be due to his multiple head
> injuries or as a result of his anxiety and preoccupation with recent
> breakup. The patient expresses overvalued ideas around his
> previous employment and past relationships with women. He
> frequently interrupts writer to discuss his security clearance and
> status in law enforcement. Cluster B traits cannot be excluded. His
> past history of impulsivity and spending does leave concern for
> Bipolar Disorder. This and substance use should be further
> explored. [Plaintiff] denies any medication management at this time.

Dkt. #11, p.717.

The ALJ relied upon an unremarkable CT scan and reports of normal neurological findings to find that plaintiff's alleged neurological impairments, insomnia and history of traumatic brain injury were not as severe as alleged. Dkt. #11, p.342. Despite the diagnosis of anxiety, the ALJ found it "important to note that the record generally lacks objective medical findings from mental health providers to corroborate the alleged extent of the anxiety." Dkt. #11, p.342. The ALJ further determined that the lack of medication management and refusal to receive medication was inconsistent with the alleged severity of plaintiff's anxiety. Dkt. #11, p.343. She also noted his lack of consistent treatment and substance use as evidence undermining the alleged intensity and limiting effects of plaintiff's psychiatric symptoms. Dkt. #11, p.343. The ALJ afforded Dr. Chestnutt's opinion little weight in light of the "generally normal psychiatric findings reflected in the medical evidence, lack of consistent mental health treatment, non-compliance and alcohol use." Dkt. #11, p.344. The ALJ afforded Dr. Dorres' opinion some weight as it was supported with evidence throughout the record, including the "generally normal psychiatric findings reflected in the medical evidence." Dkt. #11, p.345. The ALJ afforded Ms. Edmonson's opinion very limited weight in light of the "generally normal psychiatric findings reflected in the medical evidence, lack of consistent mental health treatment, non-compliance and alcohol use." Dkt. #11, p.345. The ALJ also found the extent of the limitations identified by Ms. Edmonson unsupported by objective medical evidence or plaintiff's reported abilities. Dkt. #11, p.345.

The ALJ's rejection of all of the medical source opinions is not supported by substantial evidence, as is obvious from the exhaustive recitation of the medical

record set forth above. *See Shamone W. v. Comm'r of Soc. Sec'y*, 2021 WL 1015934, at *6 (W.D.N.Y. Mar. 17, 2021) (rejecting ALJ's formulation of an RFC that was completely divorced from the assessments reflected in each of the opinions of record). Where, as here, application of the correct legal standards to all of the relevant evidence, including acceptable medical source opinion evidence and other source opinion evidence, compels the conclusion that plaintiff is disabled, remand for calculation of benefits is warranted. *See Trumpower v. Colvin*, 2015 WL 162991, at *18 (W.D.N.Y. Jan. 13, 2015) (remanding for calculation of benefits based upon medical source opinion of Licensed Master Social Worker).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #16), is granted in so far as plaintiff seeks remand for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #18), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:  Buffalo, New York**
**September 30, 2021**

  s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

-18-